ATTORNEY DISCIPLINARY PROCEEDINGS
.PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Robert E. Randolph, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS AND PROCEDURAL HISTORY
Count I — The Pogue Matter
In late 1999, Willie Pogue retained respondent to seek post-conviction relief on his behalf. Respondent quoted a flat fee of $1,500 for the representation. Mr. Po-gue’s brother paid respondent $950, of which $750 went toward respondent’s fee. However, respondent failed to file Mr. Po-gue’s application for post-conviction relief.[1] He also failed to communicate with his client and failed to account for the money paid toward the $1,500 fee.
Mr. Pogue filed a complaint against respondent with the ODC. Despite receiving notice of the complaint, respondent failed to answer it, which required the ODC to issue a subpoena. The sheriffs office was unable to serve respondent, | ¿necessitating the ODC to issue a second subpoena, which ultimately was served by the ODC’s staff investigator.
In a July 24, 2002 sworn statement, respondent promised to provide a written response to the complaint within two weeks. He also promised to file Mr. Po-gue’s application for post-conviction relief by October 2002. Respondent did neither. In January 2003, the ODC hand delivered a letter to respondent reminding him of his promises. However, respondent still failed to take any action in the matter.
The ODC alleged that respondent’s conduct violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(f)(6) (failure to account for fees and/or refund an unearned fee) and/or 1.16(d) (obligations upon termination of the representation), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.
Count II — The WestonfWilliams Matter
In 1997, Dorothy Weston retained respondent to seek post-conviction relief on behalf of her husband, Johnnie Williams. Between March 1997 and July 1997, Ms. Weston provided respondent with pertinent documents and paid him $1,125 of the agreed-upon $3,500 fee. Thereafter, respondent failed to communicate with either Ms. Weston or Mr. Williams. He also failed to file Mr. Williams’ application for post-conviction relief. In November 2001, Ms. Weston sent a certified letter to respondent, discharging him. Respondent failed to claim the letter.
Thereafter, Ms. Weston filed a complaint against respondent with the ODC, requesting that respondent return her file and refund any unearned fee. Respondent | ¡¡failed to answer the complaint, but he did return Ms. Weston’s file. His failure to respond necessitated the issuance of a sub *1071 poena. The sheriffs office was unable to serve respondent, necessitating the issuance of a second subpoena, which was served by the ODC’s staff investigator.
In a July 24, 2002 sworn statement, respondent promised to refund the unearned fee to Ms. Weston within fourteen days. Despite this promise, respondent failed to account for the money paid and/or refund any unearned portion. In January 2003, after respondent failed to claim a certified letter, the ODC hand delivered a follow-up letter to respondent. However, respondent still failed to take any action in the matter.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5(f)(6) and/or 1.16(d), 8.4(a), and 8.4(g) of the Rules of Professional Conduct.
Count III — The Elsie Williams Matter
Elsie Williams filed a complaint against respondent with the ODC.[2] Despite receiving notice of the complaint, respondent failed to timely answer it. In an untimely fax sent to the ODC, respondent indicated he would mail the original response along with certain enclosures. However, respondent failed to do so. As such, the ODC hand-delivered a follow-up letter to respondent, who still failed to respond.
The ODC alleged that respondent’s conduct violated Rules 8.4(a) and 8.4(g) of the Rules of Professional Conduct.
Count TV — The Armstead Matter
|4Neil Armstead filed a complaint against respondent with the ODC.[3] The ODC sent a copy of the complaint to respondent by certified mail, but respondent failed to claim it. The ODC then hand-delivered a copy of the complaint to him. However, respondent failed to answer it.
The ODC alleged that respondent’s conduct violated Rules 8.4(a) and 8.4(g) of the Rules of Professional Conduct.
DISCIPLINARY PROCEEDINGS

Joint Stipulation

After the ODC filed formal charges in this matter, respondent and the ODC entered into a “Joint Stipulation of Facts and Rule Violations.” In this pleading, respondent stipulated to the facts as alleged by the ODC. Respondent admitted to violating the Rules of Professional Conduct as charged, but reserved his right to dispute the allegations that he failed to refund the unearned fees in the Pogue matter and Weston/Williams matter. Subsequently, respondent agreed he would participate in the Louisiana State Bar Association’s Alternative Fee Dispute Resolution program in connection with these matters. In return, the ODC agreed not to pursue charges of failure to refund an unearned fee; rather, the ODC would only pursue violations of Rules 1.5(f)(6) and/or 1.16(d) in regard to respondent’s failure to account for fees. Respondent stipulated to a failure to provide accountings in violation of these rules.

Formal Hearing

The hearing committee conducted a formal hearing which was limited to the issue of mitigation. Respondent testified about the problems he was having during Rthe time period of the misconduct in dealing with his Attention Deficit Disorder (“ADD”), depression, and anxiety. He also testified that his 21-year old daughter, who still lives at home, suffers from autism and schizophrenia.

*1072
Hearing Committee Recommendation

Considering the stipulated facts, respondent’s testimony, and the documentary evidence presented at the hearing, the hearing committee made factual findings consistent with the joint stipulation and determined that respondent violated the Rules of Professional Conduct as stipulated to by the parties.
The committee found that respondent violated duties owed to his clients. He repeatedly failed to provide diligent and prompt representation to his clients or respond to their requests for information. He also failed to provide accountings for client funds and did not cooperate with the ODC’s investigations. The committee further determined that respondent acted negligently, if not intentionally. His conduct caused actual harm to Mr. Pogue and Mr. Williams in that they may be time barred from seeking post-conviction relief. Furthermore, the committee noted respondent’s conduct was not an isolated event or a mere oversight but a pattern of neglect and intentional refusal to respond to his clients and the ODC. The committee determined that the baseline sanction for respondent’s misconduct is in the range of a public reprimand to a period of suspension.
As aggravating factors, the committee recognized respondent’s prior disciplinary offenses,[4] a pattern of misconduct, multiple offenses, vulnerability of the victims, and substantial experience in the practice of law (admitted 1988). However, | fiin mitigation, the committee cited respondent’s personal and emotional problems, mental disability or impairment,[5] and remorse.
Under these circumstances, the committee recommended that respondent be suspended from the practice of law for two years.[6]
Neither respondent nor the ODC objected to the hearing committee’s recommendation.

Disciplinary Board Recommendation

Accepting the facts and rule violations as stipulated to by the parties, the disciplinary board found that respondent knowingly violated duties owed to his clients and as a professional. Furthermore, it found his conduct caused harm to his clients and the disciplinary system. At the least, his conduct delayed his client’s legal matters and caused delay and expense in the disciplinary process. At the most, it may have caused his clients to lose their rights to post-conviction relief. Relying on the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the baseline sanction for respondent’s misconduct is a period of suspension.
The board adopted the aggravating factors found by the committee and agreed that respondent’s personal and emotional problems and remorse are mitigating factors. However, the board determined there is no evidence of a causal link between respondent’s misconduct and his depression, anxiety, and ADD. As such, the board rejected the committee’s finding *1073 that these mental disabilities should be considered in mitigation.
^Considering the prior jurisprudence of this court, the board found the two-year suspension recommended by the committee was appropriate. However, in light of the mitigating factors, the board recommended that all but one year and one day of the suspension be deferred.
Respondent filed an objection to the disciplinary board’s recommendation. Pursuant to Supreme Court Rule XIX, § 11(G)(1)(b), the case was scheduled on our docket. However, prior to oral argument, respondent advised the court that he would not appear. In light of respondent’s representation that he would not appear, the ODC filed a motion seeking to waive oral argument. We granted the motion and now consider the case based upon the parties’ briefs.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Based on the stipulation of facts and respondent’s admission to the allegations of misconduct, the record supports the conclusion that respondent neglected his clients’ legal matters, failed to communicate with his clients, and failed to provide accountings. He also failed to cooperate with the ODC in four separate disciplinary |smvestigations. Respondent violated duties owed to his clients and as a professional. He acted knowingly and caused harm to his clients and the disciplinary system.
Having found evidence of professional misconduct, the next issue presented for our consideration is the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
The discipline imposed by this court for similar misconduct ranges from six months to as much as two years, partially deferred, depending on the number of counts involved and the aggravating and mitigating factors present.. See, e.g., In re: Barry, 01-1722 (La.10/26/01), 799 So.2d 479 (lawyer suspended for six months, followed by one year of supervised probation and Ethics School, for one count of failure to complete a post-conviction matter, with numerous aggravating factors including failure to cooperate with the ODC); In re: Bankston, 01-1352 (La.6/29/01), 791 So.2d 1263 (lawyer suspended for one year and one day for two counts of failure to communicate, failing to account for fees and failing to cooperate with ODC); In re: Wyatt, 02-0053 (La.4/12/02), 814 So.2d *1074 1265 (lawyer suspended for eighteen months for four counts of neglect of client matters and failure to cooperate with the ODC with numerous aggravating factors, including lengthy prior disciplinary record); and In re: Pryor; 03-2376 (La.1/21/04), 864 So.2d 157 (lawyer suspended for two years with eighteen months deferred, followed by two years of probation, for [9numerous counts of misconduct, including failure to communicate with clients and failure to cooperate with the ODC, with significant mitigating factors).
The applicable aggravating factors in the instant matter include respondent’s prior disciplinary offenses (two admonitions for similar misconduct), a pattern of misconduct, multiple offenses, vulnerability of the victims, and substantial experience in the practice of law. As mitigating factors, we recognize respondent’s personal and emotional problems[7] and remorse.
Considering all the circumstances of this case, we conclude the appropriate discipline for respondent’s misconduct is suspension from the practice of law for a period of one year and one day, which will necessitate that respondent file a formal application for reinstatement.[8]
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record and the briefs filed by the parties, it is ordered that Robert Earl Randolph, Louisiana Bar Roll number 19118, be suspended from the practice of law for a period of one year and one day. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty, days from the date of finality of this court’s judgment until paid.

. In a May 2001 letter, respondent informed Mr. Pogue that he had been waiting for this court to rule on a pending writ application in the case before filing the petition for post-conviction relief. In fact, this court denied the writ application several months earlier, in December 2000.

. The substantive allegations of this complaint are not before the court, as the ODC ultimately did not file any charges based upon the complaint.

. As in the Elsie Williams matter, the substantive allegations of this complaint are not before the court, as the ODC ultimately did not file any charges based upon the complaint.

. Respondent was admonished by the disciplinary board in 1994 for failing to cooperate with the ODC in a disciplinary investigation. He was also admonished in 1999 for neglecting a legal matter and failing to communicate with a client.

. While the committee included mental disability or impairment as a mitigating factor, it noted that respondent was never diagnosed with a particular disability. As such, the committee stated that it "cannot tell if [respondent] actually suffers from' any type of physical or mental disability.”

.The committee also noted that "there is no apparent resolution in sight” for the personal and emotional problems respondent has been having. As such, it suggested he is in no condition to practice law for the "foreseeable future.”

. Like the disciplinary board, we find respondent has not introduced sufficient evidence to support the mitigating factor of mental disability.

. The disciplinary board recommended that respondent receive a two-year suspension with all but one year and one day deferred. This recommendation would result in respondent serving an actual suspension of one year and one day, with one year deferred. Typically, when this court defers a portion of a suspension, the respondent is not required to file an application for reinstatement, so the court places the respondent on probation, with the condition that any misconduct during the probationary period may be grounds for imposing the deferred portion of the suspension. However, in the instant case, respondent will be suspended for a period of one year and one day and will be required to file an application for reinstatement. In such cases, the court has generally declined to impose any future conditions on the respondent, on the theory that such issues are more properly addressed if and when respondent applies for reinstatement. See In re: Welcome, 02-2662 (La.1/24/03), 840 So.2d 519 (imposing an eighteen month actual suspension, but declining to impose a two-year period of supervised probation with conditions because "such issues, along with any other relevant factors, may be addressed if and when respondent applies for reinstatement”).